IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JOHN BANKS, | ) | |
| | ) | Case No. CV-04-125-E-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **DECISION AND ORDER** |
| | ) | |
| POCATELLO SCHOOL DISTRICT | ) | |
| NO. 25, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Currently pending before the Court is defendant Pocatello School District

No. 25's motion for summary judgment on all of plaintiff John Banks's claims

(Docket No. 37), which Banks opposes.  The Court heard oral argument on the

motion on April 11, 2006.  For the reasons set forth below, the Court grants in part

and denies in part the motion for summary judgment (Docket No. 37).  The Court

will not decide Banks's motions to strike and to exclude evidence (Docket Nos. 54,

55, 56, 57, and 58) because the Court did not rely upon that evidence to render its

decision.  The motions, therefore, will be denied as moot.  However, before trial,

Banks may move in limine to strike or to exclude the evidence.

**Memorandum Decision and Order - Page 1**

# INTRODUCTION

This litigation stems from Banks's unsuccessful efforts to obtain coaching positions in School District #25.[1]  Between 2001 and 2005, Banks, an African American, applied and was not hired for six head coach positions and one assistant coach position at two School District #25 high schools, Century High School and Pocatello High School.

In his third amended complaint, Banks makes the following claims against the district:

Sex Discrimination:

• First Cause of Action:  Banks alleges that the district discriminated against him based on his sex by hiring a woman to fill the 2001 Century High School head girls' basketball coach position.

Race Discrimination:

• Second Cause of Action:  Banks alleges that the district discriminated against him based on his race by hiring a white applicant to fill the

---

[1]  It was brought to my attention at the summary judgment hearing that Banks included my name on his list of references when he applied for some, if not all, of the positions at issue in this case.  However, I have had very limited contact with Banks, having only spoken to him in passing on one or two occasions some years ago.  Banks has never asked me to serve as a reference for him, I do not know him well enough to serve as a reference, and I have never been contacted by any prospective employer.  This is an unusual situation.  However, I am satisfied my contact with Banks has been of such a limited nature that my ability to be impartial cannot be called into question and my continued involvement in the case does not present even the appearance of impropriety.  *See* 28 U.S.C. § 455 (setting forth the circumstances warranting recusal).  Therefore, a recusal is not necessary.  *See id.*

**Memorandum Decision and Order - Page 2**

2001 Century High School head girls' basketball coach position.

- Third Cause of Action: Banks alleges that the district discriminated against him based on his race by hiring a white applicant to fill the 2001 Pocatello High School head football coach position.

- Fourth Cause of Action: Banks alleges that the district discriminated against him based on his race by hiring a white applicant to fill the 2001 Pocatello High School head girls' basketball coach position.

- Fifth Cause of Action: Banks alleges that the district discriminated against him based on his race by hiring a white applicant to fill the 2004 Century High School head football coach position.

- Seventh Cause of Action: Banks alleges that the district discriminated against him based on his race by hiring a white applicant to fill the 2004 Century High School head girls' basketball coach position.

- Ninth Cause of Action: Banks alleges that the district discriminated against him based on his race by hiring a white applicant to fill the 2005 Pocatello High School head girls' basketball coach position.

- Eleventh Cause of Action: Banks alleges that the district discriminated against him based on his race by not hiring him for the 2005 Pocatello High School assistant football coach position.

Retaliation:

- Sixth Cause of Action: Banks alleges that the district retaliated against him for filing discrimination charges by not hiring him for the 2004 Century High School head football coach position.

- Eighth Cause of Action: Banks alleges that the district retaliated against him for filing discrimination charges by not hiring him for the 2004 Century High School head girls' basketball coach position.

- Tenth Cause of Action: Banks alleges that the district retaliated

against him for filing discrimination charges by not hiring him for the 2005 Pocatello High School head girls' basketball coach position.

- Twelfth Cause of Action: Banks alleges that the district retaliated against him for filing discrimination charges by not hiring him for the 2005 Pocatello High School assistant football coach position.

As discussed below, the Court grants summary judgment to the district on Banks's Eleventh Cause of Action, and denies summary judgment on the remainder of Banks's claims. The Court will discuss the specific facts underlying each claim in the analysis sections that follow.[2]

## STANDARDS

Pursuant to Federal Rule of Civil Procedure 56, the Court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must "view the evidence in the light most favorable to the [non-moving] party," and draw "all reasonable inferences in his favor." *See Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

---

[2] Banks exhausted his administrative remedies by filing a series of charges with the Idaho Human Rights Commission and the Equal Employment Opportunity Commission (EEOC) between 2002 and 2005. Aff. of John Banks (Docket No. 48 at 3). Banks obtained right to sue letters on all of his claims. *See* Pl.'s Third Am. Compl. (Docket No. 33 at 14).

**Memorandum Decision and Order - Page 4**

## The DISTRICT'S MOTION FOR SUMMARY JUDGMENT

The district moves for summary judgment on all of Banks's discrimination and retaliation claims.  Banks claims that the district subjected him to disparate treatment because of his race by not hiring him for any of the seven coaching positions for which he applied, and because of his sex by not hiring him for the Century High School head girls' basketball coach position for which he applied in 2001.  He also claims that the district retaliated against him by not hiring him for the positions for which he applied in 2004 and 2005 after he filed charges with the Idaho Human Rights Commission and the EEOC.  The Court will address each of Banks's claims in turn.[3]

### A.    Disparate treatment claims

### 1.    Discrimination based on race

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire . . . any individual, . . . with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-

---

[3]  Banks asserts his claims under both federal law and the Idaho Human Rights Act.  *See* Idaho Code § 67-5909.  Because the same standards apply under federal and Idaho law, the Court will reference only federal law in the sections below.  *See Bowles v. Keating*, 606 P.2d 458, 462 (Idaho 1979) (adopting the standards promulgated in federal discrimination cases for purposes of analyzing claims brought under the Idaho Human Rights Act).

2(a)(1).  Banks may prove that the district discriminated against him through circumstantial evidence, following the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

### a.   Prima facie evidence

To establish a prima facie case of discrimination, the plaintiff's first burden under the *McDonnell Douglas* framework, Banks must show that (1) he belongs to a statutorily protected class, (2) he applied for and was qualified for an available position, (3) he was rejected despite his qualifications, and (4) his rejection occurred under circumstances that give rise to an inference of unlawful discrimination.  *See id*. at 802; *Peters v. Lieuallan*, 693 F.2d 966, 969 (9th Cir. 1982) (noting that the fourth *McDonnell Douglas* "requirement that the position 'remain open' is not applicable to a selection process where a pool of applicants competes simultaneously for a single position . . . ").  At this stage, the amount of evidence Banks must put forward is "*minimal* and does not even need to rise to the level of a preponderance of the evidence."  *Aragon v. Republic Silver State Disposal Inc*., 292 F.3d 654, 659 (9th Cir. 2002) (internal quotation marks omitted) (emphasis in original).

The district concedes that Banks has met the first three requirements, but contests the fourth.  According to the district, no circumstances give rise to an

**Memorandum Decision and Order - Page 6**

inference of unlawful discrimination based on race with respect to any of the decisions of which Banks complains.  The Court first will analyze the district's contention with respect to the head coach positions for which Banks applied and then with respect to the assistant coach position.

### i.    Head coach positions

Banks applied for six head coach positions with the district, including four positions coaching girls' basketball and two coaching boys' football, all at the high school level.  Pl.'s Statement of Disputed Material Facts (Docket No. 47 at 4–10).  Drawing all reasonable inferences in favor of Banks, Banks has raised a genuine issue of material fact that the district's rejections occurred under circumstances giving rise to an inference of race-based discrimination.  First, the district selected a white applicant to fill each position.  *See Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).  Second, Banks had many years of experience coaching girls' basketball and boys' football in the district, *see* Aff. of John Banks (Docket No. 48 at 6–8), possibly more than any of the selected applicants.[4]  Accordingly, the Court will proceed to the next *McDonnell Douglas* step with respect to Banks's claims

---

[4]  Banks asserts that he was more qualified than all of the selected applicants.  Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. (Docket No. 46 at 10).  Banks's subjective, personal judgments of his qualifications are relevant in satisfying his minimal burden of establishing a prima facie case.  *See Aragon*, 292 F.3d at 660.

**Memorandum Decision and Order - Page 7**

regarding the head coach positions.

### ii.     Assistant coach position

Banks also applied and was not hired for a position as an assistant football coach at Pocatello High School in 2005.  Banks's only competition for the position was Artie Holmes, another African American.  Aff. of Artie Holmes (Docket No. 43).  Banks points to nothing raising an inference of race-based discrimination with respect to this position.[5]  The only evidence Banks offers is his assertion that he was the more qualified applicant.  However, because the district hired an applicant who was African American in this instance, even clearly superior qualifications would not raise an inference that race motivated the hiring decision.[6]  Accordingly, the Court will grant the district summary judgment on Banks's Eleventh Cause of Action.

### b.     The district's legitimate, nondiscriminatory reason for rejecting Banks for the six head coach positions

Because Banks has established a prima facie case of discrimination for the

---

[5]  However, Banks has raised an inference that the hiring decision was retaliatory, as discussed below.

[6]  The Court recognizes that the fact that the district hired an African American is not conclusive regarding Banks's ability to establish a prima facie case.  *See Peters*, 693 F.2d at 969.  However, the Court may consider that fact, along with Banks's evidence of discrimination, in determining whether Banks has satisfied his burden.

**Memorandum Decision and Order - Page 8**

six head coach positions, a rebuttable presumption arises that the district

unlawfully discriminated against him. *Lyons*, 307 F.3d at 1112. The burden of

production thus shifts to the district "to articulate a legitimate, nondiscriminatory

reason" for Banks's rejections. *Id*. (internal quotation marks omitted). The district

must set forth its reasons clearly and point to admissible evidence in its support.

*Id*.

The district asserts it did not select Banks because each hiring committee

ranked him lower than the hired applicant based upon his answers to a set of

standardized questions. Evidence of Banks's rankings consists of: (1) the

committees' ranking forms for each position except the 2001 Century head girls'

basketball coach position, *see* Aff. of Counsel (Docket No. 40, Attach. 13 at 3–7,

11–12, Attach. 14 at 10–19, Attach. 15 at 3–72, and Attach. 16 at 3–57); and (2)

Century High School Principal Patrick Charlton's testimony that Banks ranked

lower than the selected applicant for the 2001 Century head girls' basketball coach

position. *Id.* (Docket No. 40, Attach. 10 at 12, Attach. 14 at 1–2, 4–7).

The district's proffered reason for not hiring Banks is legitimate and

nondiscriminatory. *See Raad v. Fairbanks N. Star Borough Sch. Dist*., 323 F.3d

1185, 1193 (9th Cir. 2003). Thus, the burden shifts back to Banks to demonstrate

that its reason is merely a pretext for discrimination. *See Lyons*, 307 F.3d at 1112.

**Memorandum Decision and Order - Page 9**

### c.    Pretext

Banks can show pretext indirectly by demonstrating that the district's proffered reason is not worthy of credence because it is internally inconsistent or otherwise not believable.  Alternatively, he may show pretext directly by demonstrating that unlawful discrimination more likely motivated the employer.  *Id*. at 1113.  Circumstantial evidence of pretext must be "specific and substantial" in order to preclude summary judgment.  *Id*.

Banks argues that the district's reason for not hiring him for any of the six head coach positions is not believable for two reasons:  (1) he was more qualified than the selected applicants, and (2) the district's proffered reason for his lower rankings contradicts its assessments of his skills in other contexts.  For the reasons discussed below, Banks's first argument fails but his second succeeds.  Banks also presents strong evidence of race discrimination with respect to one of the positions that further bolsters his argument for pretext.

### i.    Banks's qualifications vis-a-vis the selected applicants

Banks's first argument that his qualifications were clearly superior to those of the selected applicants fails.  *See Raad*, 323 F.3d at 1194 (plaintiff's qualifications must be "clearly superior" to show pretext).  As to the 2001 and

2004 Century head girls' basketball coach positions and the 2001 Pocatello head

football coach position, Banks's qualifications were not superior to the selected

applicants.  He did not have experience as a high school head coach at the varsity

level, while the other applicants did.  Banks has not explained why his years of

assistant coaching experience made him more qualified for a head coach position

than applicants with head coach experience.  *See Blue v. Widnall*, 162 F.3d 541,

546 (9th Cir. 1998); *Cotton v. City of Alameda*, 812 F.2d 1245, 1249 (9th Cir.

1987); *Denney v. City of Albany*, 247 F.3d 1172, 1187–88 (11th Cir. 2001).

The qualifications of the selected applicant for the 2001 Pocatello head girls'

basketball coach position present a closer question.  Banks's qualifications may

have been somewhat better.  However, because they were not *clearly* superior, they

cannot satisfy Banks's burden.  *See Widnall*, 162 F.3d at 546 (evidence that

plaintiff's and selected applicant's qualifications were close is insufficient to

preclude summary judgment).

As to the 2004 Century head football coach and 2004 Pocatello head girls'

basketball coach positions, Banks has not advanced sufficient evidence of the other

applicants' qualifications to raise a genuine issue of material fact.[7]  *See Schuler v.*

---

[7]  The Court rejects Banks's argument that the district bore the burden of producing
evidence of the other applicants' qualifications.  Under the *McDonnell Douglas* burden-shifting

*Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (at third stage of

*McDonnell Douglas* framework, plaintiff must support her personal judgment that

she was the more qualified candidate with substantiating evidence in order to

survive summary judgment).  Thus, Banks has not shown pretext based upon the

comparative superiority of his credentials.

### ii.     Banks's communication and organizational skills

Banks's second argument for pretext succeeds.  When deposed, four district

administrators, each of whom served on one or more of the selection committees,

cited two principal reasons why the committees ranked Banks lower.[8]  First,

Banks's communication skills were lacking.  Second, Banks lacked the

organizational skills necessary for a head coach position.  *See* Aff. of Counsel

---

framework, it was Banks's burden to produce evidence showing pretext.  *See McDonell Douglas*, 411 U.S. at 804–05.  To satisfy that burden, Banks had to produce evidence not only of his own qualifications, but also of the selected applicants' qualifications.  *See Widnall*, 162 F.3d at 546; *Cotton*, 812 F.2d at 1249.

[8]   The administrators include:  (1) Century Principal Charlton, who conducted the 2001 Century head girls' basketball hiring process, (2) Pocatello Principal Don Cotant, who conducted the 2001 Pocatello head football and 2001 and 2005 Pocatello head girls' basketball hiring processes, (3) Highland Assistant Principal Don Neves, who sat on the 2001 Pocatello head girls' basketball and head football selection committees, and (4) Century Assistant Principal and Athletic Director John Raukar, who sat on the 2001 Century head girls' basketball selection committee and conducted the 2004 Century head girls' basketball and head football hiring processes.

**Memorandum Decision and Order - Page 12**

(Docket No. 40, Attach. 8 at 13, Attach. 10 at 22, Attach. 11 at 20–23, Attach. 12 at 5–6, 9, 11).  Banks raises a genuine issue of material fact regarding the validity of these otherwise-neutral reasons by pointing to favorable evaluations of his organizational and communication skills by the district in the teaching context.

The district has employed Banks as a history and/or physical education teacher since 1996.  Two of the district administrators who sat on the head coach selection committees and cited Banks's lack of communication and organizational skills as the reason why he was not selected wrote the majority of Banks's teacher evaluations.[9]  The evaluations describe Banks's teaching style as "very well organized," "systematic[]," "clear," and "well planned."  They also consistently assessed his communication skills with parents and students favorably.[10]  *See* Aff. of James Ruchti (Docket No. 50, Attach. 3 at 20, 28, Attach. 4 at 18, 30–31, Attach. 5 at 2).  These positive teacher evaluations, Banks argues, are proof not only that he possesses the skills the district claims he lacks, but also that the district believes he possesses those skills.

------

[9]  These administrators are Charlton and Raukar.

[10]  In addition to the reasons cited above, Charlton also testified that Banks did not get the 2001 Century head girls' basketball coach position because he "was late quite often for everything," including for class.  Aff. of Counsel (Docket No. 40, Attach. 10 at 23).  However, there is no mention in the evaluations that Banks had a problem with tardiness.

**Memorandum Decision and Order - Page 13**

The positive evaluations of his organizational and communication skills that Banks received as a teacher raise doubt about the deposed administrators' proffered reasons for not hiring him as a coach.  Although the district may be right that the skills required in the classroom are not identical to the skills required in the sports arena, the district has not pointed to evidence currently in the record that justifies summary judgment based on that argument.  At trial, the district will have an opportunity to develop the facts supporting its argument.

Coupled with Banks's circumstantial evidence that the district selected a white applicant over him for each position, Banks's positive teacher evaluations could allow a reasonable trier of fact to infer that the deposed administrators harbored a discriminatory motive against Banks.  *See Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987) (plaintiff raised question of fact that employer's reason for demoting him was pretext by presenting evidence of past positive job evaluations).  Even if the other committee members had legitimate reasons for not hiring Banks, the impact on the hiring process of members who harbored a discriminatory motive may have been substantial.  *See Lam*, 40 F.3d at 1560 (noting that, where, as here, a selection committee is small and great emphasis is placed on consensus decisionmaking, "even a single person's biases may be relatively influential").  Accordingly, the Court denies the district's motion for

**Memorandum Decision and Order - Page 14**

summary judgment with respect to Banks's Second, Third, Fourth, Fifth, Seventh, and Ninth Causes of Action.

### iii.    Other evidence of race-based discrimination

Banks presents direct evidence of race discrimination with respect to the 2001 Century head girls' basketball coach position that bolsters his argument for pretext.  Specifically, Banks alleges that Century Principal Charlton, who conducted the interviews and made the final selection for the position, told the third ranked applicant, "[a]ll things being equal, you would have gotten the job, but I really wanted a woman in that position."[11]  Aff. of Larry Steed (Docket No. 51 at 1).  Charlton's statement that he would have hired the third ranked applicant over Banks, the second ranked applicant, provides direct evidence that the district made hiring decisions based on criteria other than the applicants' rankings.  Thus, the statement, if believed, undermines entirely the district's proffered nondiscriminatory reason for not hiring Banks, at least with respect to the 2001 head girls' basketball coach position.

---

[11]  Charlton's alleged statement is not inadmissible hearsay because it constitutes an admission by a party opponent.  *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998); *see also Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001).  Nor does it matter that Charlton's statement did not directly concern Banks.  *See Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 n.6 (9th Cir. 2005).

**Memorandum Decision and Order - Page 15**

## 2.     Discrimination based on sex

Banks alleges that the district discriminated against him based on his male sex when it selected Courtnie Smith-Stoor, a female, as the 2001 Century head girls' basketball coach.[12]  To satisfy his burden, Banks points to Charlton's statement quoted in the previous section as direct evidence that the district took Smith-Stoor's sex into account in hiring her for the position.  *See Coghlan*, 413 F.3d at 1095 ("Direct evidence is evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption.") (internal quotation marks and brackets omitted).  The district does not dispute that, in fact, Banks, not Steed, was ranked second behind Smith-Stoor.[13]  Thus, a genuine question of fact exists that Banks's sex motivated the district's selection of Smith-Stoor over him.[14]  *See Godwin*, 150 F.3d at 1221.  Accordingly, the Court denies summary judgment

---

[12]   The district's argument that Banks is not a member of a protected class lacks merit. Title VII protects men, as well as women, from gender-based discrimination.  *See La Riviere v. EEOC*, 682 F.2d 1275, 1278 (9th Cir. 1982).

[13]   After the first interview, another applicant, Bud Randall, had a higher score than Banks.  However, when Randall declined a second interview, Banks became the second choice behind Smith-Stoor.  *See* Aff. of Counsel (Docket No. 40, Attach. 14 at 1).

[14]   The Court's conclusion is bolstered by the Idaho Human Rights Commission's finding of probable cause to believe that sex was a motivating factor in the district's selection of Smith-Stoor.  *See* Aff. of Counsel (Docket No. 40, Attach. 5); *Gifford v. Atchison, Topeka, and Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 (9th Cir. 1982) (holding that an administrative finding of probable cause is sufficient to create a question of fact for a jury).

**Memorandum Decision and Order - Page 16**

with respect to Banks's First Cause of Action.

### B.     Retaliation claims

Banks alleges that the district retaliated against him by not hiring him for the
four positions for which he applied in 2004 and 2005 after he filed charges with the
Idaho Human Rights Commission and the EEOC.  Title VII prohibits employers
"from retaliating against an applicant for employment because the applicant has
opposed any unlawful employment practice, or has made a charge, testified,
assisted, or participated in an employment discrimination investigation or
proceeding."  *Lam*, 40 F.3d at 1558-59 (citing 42 U.S.C. § 2000e-3(a)).  The
*McDonnell Douglas* burden-shifting framework applies to retaliation claims as
well.  *Id*. at 1559 n.11.

To make out a prima facie case of retaliation, Banks must show that:  (1) he
acted to protect his Title VII rights, (2) the district subjected him to an adverse
employment decision, and (3) a causal link exists between the protected activity
and the district's action.  *See Bergene*, 272 F.3d at 1140–41.  The district argues
that Banks has shown no causal link between his actions and the district's hiring
decisions.[15]

---

[15]  The district does not dispute that Banks has met the first and second requirements:  he
filed charges with the EEOC and the Idaho Human Rights Commission in 2002 and 2004, and

Banks has shown a causal link and has therefore met the third requirement with respect to each coaching position.  Regarding the 2004 Century head football coach position, Banks points to direct evidence of retaliation.  Jay Ferguson, a Century staff member who served on the selection committee, gave Banks the lowest score possible for each question.  In the form's comment section, he explained his low rankings by saying, "Law suit v. own school!!"  Aff. of Counsel (Docket No. 40, Attach. 16 at 10).  Ferguson's comment, coupled with his low scoring of Banks's performance, raises an inference that Banks's lawsuit against the district lowered his score and therefore influenced the district's hiring decision. *See Lam*, 40 F.3d at 1560.

Regarding the 2005 Pocatello assistant football and head basketball coach positions, Banks alleges that Pocatello High School head football coach, Tom Harrison, who served on the assistant football coach selection committee, told him prior to the interviews for the positions that if he dropped this lawsuit, he would be hired.  *See* Aff. of John Banks (Docket No. 48 at 4); Aff. of James Ruchti (Docket No. 50, Attach. 7 at 24).  Harrison's alleged statement provides direct evidence linking Banks's protected actions to the district's hiring decisions, arguably with

the district subsequently did not hire him for the two 2004 head coach positions and the 2005 head coach and assistant coach positions.  *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 n. 19 (9th Cir. 2004).

**Memorandum Decision and Order - Page 18**

respect to both the assistant and head coach positions.[16]  *See Bergene*, 272 F.3d at 1141.

Regarding the 2004 Century head girls' basketball position, Banks testified that in the summer of 2004, just after he had been named interim head girls' basketball coach, between 25 and 60 parents held a meeting with school administrators at which they criticized Banks for suing the school district. Principal Charlton and Assistant Principal Raukar were present at the meeting.  *See* Aff. of Counsel (Docket No. 40, Attach. 10 at 20–21); Aff. of James Ruchti (Docket No. 50, Attach. 2 at 11–12, Attach. 12 at 15–16, Attach. 17).  Soon afterwards, in September 2004, a selection committee, which included several Century parents, decided not to hire Banks to fill the position permanently.

Although Banks has not shown that any of the parents at the meeting served on the selection committee, he has presented evidence suggesting that criticism of him for filing the lawsuit spread well beyond the meeting throughout the school community.  *See* Aff. of James Ruchti (Docket No. 50 at 17).  Although it is a

---

[16]  Viewing the evidence in the light most favorable to Banks, Harrison's alleged statement regarding the lawsuit does not simply express a personal opinion about the suit. Rather, due to Harrison's status as an agent of the district, his statement suggests more:  that individuals with decisionmaking authority decided to deny Banks a position before he was interviewed unless he dropped the suit.

**Memorandum Decision and Order - Page 19**

close question, Banks need present "very little" evidence at the prima facie stage to raise an inference of retaliatory motive. *See Lyons*, 307 F.3d at 1113. Coupled with the direct evidence of retaliation as to the other Century position, Banks's evidence regarding this position suffices to raise an inference that retaliation motivated the hiring decision. *See Lam*, 40 F.3d at 1560.

Banks has established prima facie retaliation claims with respect to all four positions. The burden thus shifts to the district to articulate a legitimate, nonretaliatory reason for not hiring Banks for the four positions. *See Yartzoff*, 809 F.2d at 1376. As discussed previously with respect to the race discrimination claims, the district's proffered reason – that Banks scored lower than the selected applicants based solely on his answers to a set of standardized questions – satisfies the district's burden. Therefore, Banks must show that the district's reason is pretextual either indirectly, by showing that the reason is not believable, or directly, by showing that an unlawful motive more likely prompted the hiring decision. *Id*. at 1377.

With respect to the two positions at Pocatello High School and the head football coach position at Century High School, the direct evidence Banks presented to establish his prima facie case satisfies his burden to show pretext. That evidence, if believed, shows that a retaliatory motive more likely resulted in

**Memorandum Decision and Order - Page 20**

Banks's low rankings.  *See Bergene*, 272 F.3d at 1142.  Whether Banks has

satisfied his burden with respect to the 2004 Century head girls' basketball coach

position is a closer question.  As discussed above, Banks's circumstantial evidence

is just enough to establish his prima facie case.  Therefore, it does not satisfy his

higher burden to show pretext.  *See Lyons*, 307 F.3d at 1113.  However, as

discussed previously with respect to Banks's race discrimination claims, Banks has

raised a question of fact regarding whether the district's proffered reasons for his

low scores are pretextual.  That showing, coupled with Banks's circumstantial

evidence, is just enough to raise an inference of the district's mixed motive to

survive summary judgment.  *See Yartzoff*, 809 F.2d at 1377 (fact that plaintiff was

demoted after filing charges, coupled with evidence raising an inference that

employer's reasons for demotion were pretextual, held sufficient to preclude

summary judgment).  Therefore, the Court denies summary judgment with respect

to Banks's Sixth, Eighth, Tenth, and Twelfth Causes of Action.

## ORDER

The Court hereby GRANTS IN PART AND DENIES IN PART Defendant's

Motion for Summary Judgment (Docket No. 37).

**Memorandum Decision and Order - Page 21**

- The Court GRANTS the motion with respect to Plaintiff's Eleventh Cause of Action because Plaintiff has failed to establish a prima facie case of race discrimination.

- The Court DENIES the motion with respect to Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Twelfth Causes of Action because Plaintiff has raised a genuine issue of material fact that Defendant's hiring decisions were retaliatory and/or motivated by Plaintiff's sex or race.

- The Court DENIES as moot Plaintiff's motions to strike (Docket Nos. 54, 55, 56, and 57) and motion to exclude (Docket No. 58) without prejudice to

their renewal before trial as motions in limine.



DATED:  **April 25, 2006**

B. LYNN WINMILL

Chief Judge

United States District Court